UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGA CARTER,

        Plaintiff,

                                              Case No. 1:05-cv-529

v.

                                              Hon. Hugh W. Brenneman, Jr.

CITY OF WYOMING and
JESSE LOPEZ,

        Defendants.

_____/

**OPINION**

        Plaintiff, Virga Carter ("Ms. Carter") filed civil rights action against the City of Wyoming ("the City") and Wyoming Police Officer Jesse Lopez ("Officer Lopez") pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 49).

        **I.**     **Background**

        Ms. Carter's suit arises from the following events as alleged in her first amended complaint. On November 4, 2004, plaintiff, a 57-year old African American woman, went to the Sergio Jewelry store in Wyoming, Michigan, to pick up her diamond earrings. Amend. Comp. at ¶ 9. The store owner, Jorge Amaro ("Amaro") brought plaintiff the earrings without the diamonds. *Id.* at ¶ 10. When Ms. Carter asked about the diamonds, Amaro said that she could not pick up the jewelry and would have to come back later. *Id.* at ¶ 11. When Ms. Carter asked Amaro to call the police so that she could file a police report, Amaro told her that he could not speak English. *Id.* at ¶¶ 12-13. Ms. Carter called her sister and asked the sister to call the police to report the theft of the diamonds. *Id.* at ¶ 14. About 15 minutes later, Officer Lopez and another officer arrived at the

store. *Id.* at ¶ 15. "In an effort to find someone who could communicate with the storeowner," Ms. Carter asked Officer Lopez his nationality. *Id.* at ¶ 19. At this point, Officer Lopez allegedly "grabbed" Ms. Carter's left arm, "violently pushed her outside," and "told her she was going to jail." *Id.* at ¶ 20. Officer Lopez forcibly pulled Ms. Carter's hands behind her back and "handcuffed her extremely tight." *Id.* at ¶¶ 21-22. "[Ms. Carter] began crying out and moving in an attempt to relieve the excruciating pain in her left arm and shoulder and told [Officer Lopez] that she had a bad left shoulder." *Id.* at ¶ 23. Ms. Carter continued to cry out in pain until another officer came with a different set of handcuffs. *Id.* at ¶¶ 24-25. Ms Carter was pushed into the trunk of the police car, another set of handcuffs put on her and then was shoved into the car. *Id.* at ¶ 26. Ms. Carter spent approximately four hours in jail. *Id.* at ¶ 37.

Ms. Carter's first amended complaint contains three counts. In Count I, Ms. Carter alleges that Officer Lopez violated her rights under the Fourth and Fourteenth Amendments by using excessive and unreasonable force. Amend. Comp. at ¶¶ 38-44. Ms. Carter also alleges that the City violated her constitutional rights by failing to discipline, train, screen, supervise and control its police officers. *Id.* In Count II, Ms. Carter alleges that Officer Lopez breached his duties owed to her and was grossly negligent as that term is defined under state law, MCL § 691.1407(2)(c). *Id.* at ¶¶ 45-49. In Count III, Ms. Carter alleges that Officer Lopez committed assault and battery against her and that defendant City knew or had reason to know of Officer Lopez's "violent propensities and willingness to engage in dishonest and unlawful activities." *Id.* at ¶¶ 50-56.

Officer Lopez and the City move for summary judgment on three grounds. First, that Ms. Carter's suit is barred by the doctrine of qualified immunity. Second, that Ms. Carter's state law claims are bared by the doctrine of governmental immunity. Third, that there is no genuine

issue of material fact in this suit because Ms. Carter presented no evidence: (a) that Officer Lopez and the City violated her Fourth and Fourteenth Amendment rights; (b) that Officer Lopez used excessive force; (c) that Officer Lopez and the City acted with gross negligence towards her; (d) that Officer Lopez committed an assault and battery on her; and, (e) that the City adopted policies or procedures that caused or contributed to the alleged unlawful actions of Officer Lopez.[1]

### III.    Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

---

[1] Ms. Carter's amended complaint includes a statement that Officer Lopez told Ms. Carter that he arrested her "because 'you're black.'" Amended Comp. at ¶ 36. In their motion, defendants dispute that plaintiff was arrested due to her race. However, there is no race discrimination issue before the court.  The amended complaint does not include a count for race discrimination and Ms. Carter did not argue, in her brief or at the court hearing, that her arrest was motivated by race.  In state court, Ms. Carter did not dispute the validity of her arrest, but entered a plea of nolo contendre to the charge of disorderly conduct.  *See* Judgment of Sentence, attached to defendants' reply at exh. 13.

### IV.     Discussion

### A.     Officer Lopez's claim of qualified immunity

Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Sixth Circuit applies a three-step inquiry to determine the existence of qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 729 (6th Cir. 2007). When a defendant raises the issue of qualified immunity in a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion.

*Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774-75 (2007).  In qualified immunity cases, this typically requires the court to adopt "the plaintiff's versions of the facts."  *Id.* at 1775.[2]

Ms. Carter alleges that Officer Lopez used excessive force in the course of her arrest and in handcuffing her.  The use of excessive force by law enforcement officials in making an arrest may give rise to a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment. *See Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999).  Whether an officer has used excessive force in effecting an arrest depends on whether the officer's conduct is "objectively reasonable" in light of the facts and circumstances surrounding the arrest, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396-397 (1989).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.  While not every push or shove violates the Fourth Amendment, *see id.* at 396, the extent of plaintiff's injury is not a crucial factor in determining an excessive force claim under the Fourth Amendment, *see Bass*, 167 F.3d at 1046 n. 1.

---

[2] However, as the Supreme Court observed in *Scott*, the trial court is not bound to blindly adopt a plaintiff's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S.Ct. at 1776.  For example, in *Scott*, the Supreme Court found that where the plaintiff's version of the events was "so utterly discredited" by a videotape documenting the events, the lower court should not have relied on the "visible fiction" of plaintiff's claim. *Id.*  Rather the court "should have viewed the facts in the light depicted by the videotape." *Id.*  In the present case, defendants have submitted copies of the surveillance videotape documenting some of the events alleged in Ms. Carter's complaint.  While the videotape documents Ms. Carter's interactions with the store employees, it does not clearly depict her interactions with the police officers. Accordingly, the court will not rely on the videotape to decide the qualified immunity issue.

### 1.    Ms. Carter's arrest

At her deposition, Ms. Carter gave the following account of her contact with Officer Lopez.  When he arrived, Officer Lopez stepped in the store and asked to talk to Ms. Carter.  Carter Dep. at 19-20, attached to defendants' brief as exh. 7.  Ms. Carter thought that Officer Lopez "wouldn't be able to speak English"  so she "asked him what nationality he was."  *Id.* at 19-20, 25. Officer Lopez said "[t]hat did it lady, I'm arresting you for misconduct," and then "grabbed" or "snatched" her by the left arm.  *Id.* at 19-21, 28.  She was not screaming at the time and told him that she "had rotator surgery on this arm."  *Id.* at 20-21.  Officer Lopez put his hand on her back and led her outside to the car.  *Id.* at 21.  Then, Officer Lopez "threw me across the car and handcuffed me." *Id.*

Ms. Carter identified her injuries as follows:

Q.     What injuries do you claim you sustained as a result of being arrested?

A.     I have a retorn rotator cuff and two disks in my back, in my neck.

*Id.* at 29.  Officer Lopez drove Ms. Carter to the jail.  *Id.* at 29.

The record provides some support for Ms. Carter's claim that she suffered some type of physical injury that may have aggravated a pre-existing rotator cuff injury.  Carter Dep. at 29; Dr. Sales' report (Nov. 23, 2004) attached to plaintiff's response as exh. F (as a result of the handcuffing incident "[s]he may have retorn the rotator cuff with a possible bicipital tendinitis and an AC joint problem, and she may have just broken some adhesions of the left shoulder"); Dr. Herkner's report (Nov. 17, 2006) attached to defendants' brief as exh. 10  (opining that while Ms. Carter did not sustain a pathologic aggravation of her left shoulder during the incident, she "sustained a

6

symptomatic exacerbation of her pre-existing left shoulder problems at the time of being restrained and handcuffed by police officers").

Viewing these facts in the light most favorable to plaintiff, the court concludes that a Fourth Amendment violation occurred when Officer Lopez "grabbed" or "snatched" Ms. Carter's left arm and  "threw" her across the car in the course of her arrest.  While Ms. Carter pled nolo contendre with the misdemeanor of disorderly conduct, Ms. Carter's testimony indicates that she did not pose an immediate threat to the safety of the officers or others and was not fleeing from the scene.  *See*  Judgment of Sentence, defendants' reply at exh. 13.  This incident involved a clearly established constitutional right of which a reasonable person would have known.  Finally, taking into account Ms. Carter's deposition testimony, she has offered sufficient evidence to indicate that Officer Lopez's actions were objectively unreasonable in light of Ms. Carter's clearly established constitutional rights.  Accordingly, after adopting "plaintiff's versions of the facts," *see Scott*, 127 S. Ct. at 1775, the court concludes that Officer Lopez is not entitled to qualified immunity with respect to the use of excessive force in her arrest.

### 2.    Plaintiff's handcuffing

The Fourth Amendment also prohibits unduly tight handcuffing.  *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005).  "Not all allegations of tight handcuffing, however, amount to excessive force." *Id.*    In order to reach a jury on an excessive force claim arising from handcuffing, a plaintiff must establish (1) that she received a physical injury from the handcuffing, and, (2) that the officers ignored the plaintiff's complaints that the handcuffs were too tight. *Id.* at 575-76.  Ms. Carter has established the first element of her tight handcuffing claim, having presented evidence of an injury or re-injury to her rotator cuff from the handcuffing.

Ms. Carter gave the following testimony regarding the force used in her handcuffing:

Q.    Okay.  Did the officers, when they handcuffed you, use one set of handcuffs
      or two sets?

A.    Two.  He used one -- Lopez used one, and when he put the handcuff on me,
      he lifted my arm up and I screamed from the top of my voice, because he was
      tearing my arm up, and -- you know, and I came back like that, and the other
      officer pushed me down and put the second handcuff on me (Witness
      indicating).

Carter Dep. at 27-28.

In his affidavit, Officer Lopez stated that Ms. Carter complained about the handcuffs

and that the officers double-cuffed her to avoid unnecessary discomfort:

21.    While starting to place handcuffs on Virga Carter, she screamed that she had
       a bad shoulder.

22.    City of Wyoming Police Officer Charles Walker arrived on the scene after
       me.

23.    Officer Walker gave me his set of handcuffs so that we could double-cuff
       Virga Carter.

24.    That is a method where two sets of handcuffs are linked together so that an
       arrestee's hands are further apart behind them.

25.     That method was used to handcuff Virga Carter to avoid any unnecessary
       discomfort or injury.

Lopez Aff. at ¶¶ 21-25, attached to defendants' brief as exh. 4.

Viewing the evidence in the light most favorable to Ms. Carter, the court concludes

that she also met the second element of a Fourth Amendment handcuffing claim. If Ms. Carter was

"screaming" in pain about the handcuffs, and the officers responded by pushing her down to apply

the second set of handcuffs, then such action effectively ignored her complaints. This violation

involved a clearly established constitutional right of which a reasonable person would have known.

8

Given the facts and circumstances as related by Ms. Carter, Officer Lopez's actions were objectively unreasonable in light of the clearly established constitutional rights. Accordingly, Officer Lopez is not entitled to qualified immunity on Ms. Carter's claim regarding the tight handcuffing.

### B. Ms. Carter's § 1983 claims against the City

Next, Ms. Carter alleges that the City is liable for violating her constitutional rights, because it (1) failed to screen Officer Lopez before hiring him as a police officer, and (2) had a policy of failing to train its officers. The City's liability under § 1983 must be based on more than respondeat superior, or the right to control employees. *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 694-95 (1978); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Hays v. Jefferson County, Ky.*, 668 F. 2d 869, 874-875 (6th Cir. 1982). "[A] plaintiff who sues a city and its police department for constitutional violations under 42 U.S.C. § 1983 must establish that a governmental policy or custom caused the alleged injury." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998), citing *Monell*, 436 U.S. at 690-691. "In other words, a municipality can be liable under § 1983 only where its policies are 'the moving force' behind the constitutional violation." *Sova*, 142 F.3d 898 at 904, citing *Monell*, 436 U.S. at 694.

### 1. Failure to screen

"[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). A municipality's failure to adequately screen municipal employees can be considered deliberate indifference "only where the failure has caused a pattern of violations." *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3rd Cir. 2000). In *Gros v. City of Grand Prairie*, 209 F.3d 431(5th Cir. 2000), the court discussed the requirements to demonstrate a "failure to screen" claim as follows:

Under *Board of County Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), "deliberate indifference" to the "known or obvious consequences" of a hiring decision can amount to a constitutional violation on the part of the decision maker, but "[a] showing of simple or even heightened negligence will not suffice." Thus, "deliberate indifference" exists where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights. *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir.1998), cert. granted, 525 U.S. 1098, 119 S.Ct. 863, 142 L.Ed.2d 716, and cert. dismissed, 526 U.S. 1083, 119 S.Ct. 1493, 143 L.Ed.2d 575 (1999). There must be a strong connection between the background of the particular applicant and the specific violation alleged. *Brown*, 520 U.S. at 412, 117 S.Ct. 1382. Accordingly, plaintiffs cannot succeed in defeating summary judgment merely because there was a probability that a poorly-screened officer would violate their protected rights; instead, they must show that the hired officer was highly likely to inflict the particular type of injury suffered by them. *Id.*

*Gros*, 209 F.3d at 433-434.

Ms. Carter completely failed to present a sufficient factual basis for her claim that the City failed to screen Officer Lopez before hiring him as a police officer. Ms. Carter tries to imply that Officer Lopez had criminal convictions, i.e., "[h]e was hired as a police officer despite his criminal records appearing in his personal [sic] files prior to being hired." Plaintiff's Response at 12. However, Ms. Carter presents no such evidence. Officer Lopez testified that while a minor, he was charged with failing to obey a lawful command of a police officer, resisting a police officer, battery or disorderly conduct. Lopez Dep. at 5-7. These charges were dismissed. *Id.* After graduating from high school, Officer Lopez was a military police officer in the Marine Corps from January 1985 through January 1989. *Id.* at 4-5. While in the service, Officer Lopez was involved in a domestic argument which resulted in the military police coming to his residence. Lopez Dep. at 46-47; Lopez Dep. Exh. 1. However, no charges were filed. *Id.* Officer Lopez was hired by the Wyoming Police Department in November or December 1989. Lopez Dep. at 10. At that time, Officer Lopez had no criminal convictions and was an experienced military police officer. Ms. Carter has failed to

demonstrate that Officer Lopez was likely to inflict any particular injury on her or other citizens. *Gros*, 209 F.3d at 433-434. Under the circumstances in this case, Ms. Carter has not established that the City exercised deliberate indifference in hiring Officer Lopez. Accordingly, Ms. Carter's § 1983 failure to screen claim directed against the City will be dismissed.

### 2.      Failure to train

Next, Ms. Carter contends that the City violated her constitutional rights by failing to train its police officers. When municipal employees, such as police officers, inflict damage, the city can be held liable for failing to train its employees adequately. *Sova*, 142 F.3d at 904. However, a plaintiff can establish municipal liability "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *Canton v. Harris*, 489 U.S. 378, 389 (1988).

In support of this claim, Ms. Carter has provided documents listing 31 citizen complaints of excessive force in the City's police department from 2002 through 2006. Plaintiff's Response at exh. E. Of these complaints, the department sustained five and resolved the remaining 26 in the officers' favor as "unfounded," "not sustained," or "exonerated." Plaintiff's Response at exh. E. The existence of citizen complaints, in and of itself, does not establish a pattern or practice of deliberate indifference in the use of excessive force among the City's arresting officers.

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404.

11

Here, the fact that the City sustained 16% of the citizen complaints (i.e., an average of one sustained complaint per year over a five-year period), does not establish that the City adopted a policy of failing to train police officers, and that this policy was the "moving force" behind Officer Lopez's alleged use of excessive force.  On the contrary, the record reflects that from May 25, 1995 through January 5, 2006, Officer Lopez received 691.5 hours of training.  Officer Lopez Training Record, attached to defendants' Reply as exh. 25.  Accordingly, Ms. Carter's § 1983 claim that the City had a policy of failing to train its police officers will be dismissed.

        **C.**      **State law claims**

Next, defendants seek summary judgment on the state law claims asserted against them for gross negligence (Count II) and assault and battery (Count III).  In their motion, defendants state "[t]hat Plaintiff's state law claims are barred by the Doctrine of Governmental Immunity." Motion at ¶ 9.  However, defendants' briefs cite no authority and provide no argument to support this bald assertion.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, defendants' motion for summary judgment will be denied with respect to the state law claims alleged in Counts II and III.

### V.       Conclusion

For reasons stated above, defendants' motion for summary judgment (docket no. 49) will be **GRANTED** as to Ms. Carter's § 1983 claims asserted against the City of Wyoming and **DENIED** in all other respects.  An order consistent with this opinion shall be issued forthwith.


Dated:  September 19, 2007                                   /s/ Hugh W. Brenneman, Jr.
                                                             HUGH W. BRENNEMAN, JR.
                                                             United States Magistrate Judge